UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEANNE HALSTEAD-WHITE,

                        Plaintiff,

      v.                                          5:04-CV-690
                                                      (C.J. Scullin)
COMMISSIONER OF SOCIAL
SECURITY,

                        Defendant.
_____

APPEARANCES:                            OF COUNSEL:

OLINSKY & DI MARTINO, LLP       JAYA A. SHURTLIFF, ESQ.
Attorneys for Plaintiff

GLENN T. SUDDABY                  WILLIAM H. PEASE
United States Attorney for the         Assistant U.S. Attorney
 Northern District of New York
Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Frederick J. Scullin, Jr., Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Benefits (SSI) on June 28, 2001 (Administrative Transcript ("T") at 47-50). The application was denied initially and upon reconsideration. (T. 25, 31-34).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on December 3, 2002 . (T. 169-204). The ALJ found that plaintiff was not disabled. (T. 13-24). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 22, 2004. (T. 4-7).

## CONTENTIONS

The plaintiff makes the following claims:

(1) The ALJ did not fulfill his duty to develop the record when plaintiff appeared *pro se.* (Brief, p. 10).

(2) The ALJ failed to follow the Treating Physician Rule, Social Security Ruling 96-2p, and 20 C.F.R. § 416.927(d)(2). (Brief, p. 12).

(3) The ALJ erred in his finding about plaintiff's Residual Functional Capacity (RFC) and failed to follow Social Securing Ruling 96-8p.  (Brief, p. 15).

(4) The ALJ erred in using the Medical Vocational guidelines since plaintiff suffers from severe non-exertional limitations. (Brief, p. 17).

(5) The ALJ erred in analyzing plaintiff's credibility since he did not follow Social Security Ruling 96-7p and 20 C.F.R. § 416.929. (Brief, p. 18).

## FACTS

This court adopts the facts contained in the plaintiff's brief under the heading "Statement of Facts" on pages 3-6 to the extent that those facts are consistent with those stated in this Report-Recommendation and to the extent that the Statement of Facts does not contain argument.

# DISCUSSION

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; ... . Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the

[Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

**1.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

**2.      Failure to Develop the Record:**

It is well-settled that the ALJ has the duty to develop the record even when the plaintiff is represented by counsel. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). This duty arises from the Commissioner's regulatory obligation to develop a complete medical record prior to making a disability determination[1] and is particularly important in a case where plaintiff is unrepresented by counsel at the time of the administrative proceedings. *See Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990); *Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)(where plaintiff is pro se, ALJ is under a heightened duty to probe into and explore all the relevant facts).

The ALJ is required to obtain relevant medical records and ask questions of the pro se claimant in order to assist in developing her case. *Serrano v. Barnhart*, 02 Civ. 6372, 2003 U.S. Dist. LEXIS 20366, *47-48 (S.D.N.Y. )(citing *inter alia Rosa v.*

---

[1] 20 C.F. R. § 404.1512(d)-(f), 416.912(d)-(f).

*Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).  This is particularly important in view of the Second Circuit's treating physician rule, requiring an ALJ to give deference to a plaintiff's treating physician. *Serrano*, 2003 U.S. Dist. LEXIS 20366, *49 (citations omitted).  This is also important when there is evidence lacking from treating sources, and the ALJ is ***rejecting the treating source for lack of evidence***. *Richardson v. Apfel*, 44 F. Supp. 2d 556, 563 (S.D.N.Y. 1999)(citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)).

Plaintiff in this case contends that the ALJ failed to properly develop the record since plaintiff was *pro se* at the time of her hearing.  Plaintiff argues that if the ALJ was going to reject the opinion of Dr. Pollack because of a lack of supporting evidence, the ALJ should have corresponded directly with the doctor in an attempt to clarify Dr. Pollack's opinion.  The record shows that the ALJ carefully explained to plaintiff and her husband the plaintiff's right to have a lawyer or other representative meet with the plaintiff, discuss the case, be present at the hearing, and then question the plaintiff or anyone else. (T. 171-75).  In addition, the ALJ gave the plaintiff some postage-free envelopes to mail in any records that the plaintiff wished to send to the ALJ. (T. 175).  The ALJ specifically acknowledged that it was his responsibility to obtain all the necessary records. (T. 175).

At the hearing, the ALJ asked plaintiff who was her "main doctor" for her back problems. (T. 178).  Plaintiff told the ALJ that it was Dr. Barry J. Pollack, a neurosurgeon. *Id.*  Only one report from Dr. Pollack, dated October 9, 2002, appears in the record. (T. 155-156).  This report indicates that plaintiff would have some severe limitations in both sitting and standing. (T. 156).  The ALJ acknowledged the

October 9, 2002 report and asked plaintiff at the hearing if Dr. Pollack had also completed "the form [the ALJ] sent out." (T. 178). Although plaintiff responded that the doctor had completed the "form", the ALJ stated that he did not have it. (T. 178). Since there are no additional forms or reports from Dr. Pollack,[2] it is clear that the ALJ never received the form. Plaintiff subsequently sent the ALJ a fax, stating that she had called Dr. Pollack's office on December 3, 2002 (the day of her hearing), and she was told that the doctor had sent the form to the ALJ on November 21, 2002.[3] (T. 89).

In his decision, the ALJ states that he gave "no evidentiary weight" to the findings of Dr. Pollack[4] because "there are no supporting medical findings contained in his narrative report or elsewhere in the record to support his extreme conclusions with regard to the claimant's ability to function." (T. 20). The ALJ then states that Dr. Pollack's findings "appear to be based upon the claimant's recitation of her subjective complaints of an inability to sit or stand for prolonged periods." *Id.*

While there may be an issue as to whether Dr. Pollack is a treating physician because the record showed that plaintiff only was examined once by Dr. Pollack, the plaintiff was still pro se at the time of the hearing, and the ALJ specifically noted that Dr. Pollack had been sent an additional form to fill out. Plaintiff appears to have checked on the matter and was told that the doctor had sent an additional report to the ALJ. Given these facts, it was the duty of the ALJ to inquire regarding this report and

---

[2] There is a prescription form in the record from Dr. Pollack, dated October 8, 2002, wherein he prescribes four to six weeks of physical therapy for plaintiff. (T. 86, duplicate at 90).

[3] It should be noted that although plaintiff's hearing was in Syracuse, New York, the ALJ's office is in Stockton, California.

[4] The ALJ spells this doctor's name "Pollock", however, and the court will refer to this doctor with the correct spelling of his name.

7

follow his duty to develop the record. On remand, Dr. Pollack should be contacted for any further information or at least to obtain the report that appears to be missing from the record.

### 3. **Treating Physician Rule:**

The medical conclusions of a treating physician are controlling if well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). *See also Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998); *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999). An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d at 79 (citations omitted). If the treating physician's opinion is not given "controlling weight," the ALJ must assess the following factors to determine how much weight to afford the opinion: the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2-6); 416.927(d)(2-6). Failure to follow this standard is a failure to apply the proper legal standard and is grounds for reversal. *Barnett v. Apfel*, 13 F. Supp. 2d 312, 316 (N.D.N.Y. 1998) (citing *Johnson v. Bowen*, 817 F.2d at 985).

Plaintiff argues that the ALJ improperly rejected the opinion of neurosurgeon Dr. Barry J. Pollack and therefore, violated the Treating Physician Rule. Following plaintiff's injury on October 30, 1999, she sought and received medical treatment from

8

her family physician, Dr. Richard Tobin.  Dr. Tobin referred plaintiff for physical therapy.  (T. 76, 99).

Plaintiff did receive treatment from a neurosurgeon, Dr. W. Jay Levy.  Dr. Levy treated plaintiff on March 15, September 6, November 11, December 5, 2000, and January 3, 2001.  (T. 113-117).  Dr. Levy began with conservative care, noting that plaintiff's treatment with a chiropractor gave her only temporary relief.  (T. 117).  He then found on the September 6, 2000 visit that plaintiff's back and leg pain had improved in large part because of the steroids but that plaintiff's pain would increase if she "misses a steroid dose".  (T. 116).  Although Dr. Levy indicated that plaintiff's disability was "temporary", he did state that the disability was "total." (T. 113-18).  Although the ALJ cited Dr. Levy's reports, (T. 18), the ALJ never noted that Dr. Levy found total inability to work.  Dr. Levy clearly was a treating physician.

During the November visit plaintiff reported that her low back pain had increased and was worse with physical activity which was similar to Dr. Levy's findings during December of 2000 that plaintiff's pain would continue, especially after physical activity.  During the last visit with Dr. Levy on January 3, 2001, he reported that plaintiff was having sporadic bouts of low back pain but that she had not yet reached maximum medical improvement.  (T. 113).  Dr. Levy hoped that the future treatment would improve plaintiff's function.  Although the ALJ cited Dr. Levy's opinions, the ALJ never noted or rejected Dr. Levy's finding that plaintiff's disability was "total."  The court is well aware that a conclusory statement that a plaintiff is totally disabled is not determinative of the issue, however, since Dr. Levy was a treating physician, the ALJ should have included that analysis in his decision.

9

Plaintiff then reported to the Center for Pain Management and Dr. Stephen Meyer believed that plaintiff could be having neuropathic-related pain in her left leg and left heel. Dr. Meyer further believed epidural steroid injections would help the plaintiff's condition. (T. 119).

It was not until October of 2002 that the plaintiff was examined by Dr. Pollack. It appears that plaintiff visited Dr. Pollack on only one occasion for a consult, and as stated above, it is not clear that Dr. Pollack was a "treating" physician since he examined the plaintiff on only one occasion. The ALJ rejected Dr. Pollack's opinion, finding that there were no medical findings in his narrative report or elsewhere in the record "... to support his extreme conclusions with regard to the claimant's ability to function." (T. 20). The ALJ further stated that Dr. Pollack did not cite objective findings relating to the restrictions he placed and that Dr. Pollack's findings appeared to be based on plaintiff's recitation of her own belief about inability to sit or stand for prolonged periods. (T. 20).

A review of Dr. Pollack's report shows that he did seem to adopt exactly the restrictions that plaintiff reported to him when he was taking her history. (T. 155). Plaintiff reported that she cannot sit for more than 45 minutes to 1 hour and cannot stand for more than 15 to 20 minutes. (T. 155). These are exactly the restrictions that Dr. Pollack placed on plaintiff's capacity to sit and stand. However, the fact that a doctor relied upon a plaintiff's subjective complaints, in itself, is not a reason to discount the doctor's opinion. *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). Although the ALJ's rejection of Dr. Pollack's consultative report is based on the record, and there are **no** specific findings or evidence in the record to which Dr.

Pollack refers that would support the specific restrictions that he has placed on the plaintiff's capacity to stand and sit, there is the possibility that a report is missing from the record.

**4.      Residual Functional Capacity:**

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545; 416.945. *See also Martona v. Apfel*, 70 F. Supp. 2d 145 (N.D.N.Y. 1999)(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *LaPorta v. Bowen*, 737 F. Supp. at 183.   Furthermore, an ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Verginio v. Apfel*, 1998 WL 743706 (N.D.N.Y. Oct. 23, 1998); *LaPorta v. Bowen*, 737 F. Supp. at 183.

Plaintiff argues that the ALJ failed to comply with Social Security Ruling 96-8p because he failed to assess the effect of plaintiff's pain on her ability to perform work. (Brief, p. 16).  In making the determination that plaintiff could perform light work, the ALJ rejected Dr. Pollack's opinion as well as plaintiff's complaints of disabling pain. The ALJ cited the consultative opinion of Internist Jogendra Chhabra. (T. 18).  The ALJ cited the portion of Dr. Chhabra's report stating that there were no limitations with walking, sitting, stair climbing or personal grooming, but might have "intermittent limitations" when her back pain starts up. (T. 18). The ALJ also rejected the opinion of the plaintiff's chiropractor. (T. 21).  The court also notes that when

rejecting Dr. Pollack's opinion, the ALJ stated that "[n]one of the other physicians opined that the claimant was disabled. (T. 20). This statement is not completely accurate. Dr. Levy stated that plaintiff's disability was "total" albeit "temporary" although every one of his reports stated that the disability was "total". Dr. Levy stated that the disability was temporary because he *hoped that plaintiff's condition would improve*, however, each of the reports stated that the disability was total. (T. 113-18).

None of the doctors actually specified the physical functions that plaintiff was able to perform. In making the determination of what functions the plaintiff was actually able to perform as required in an RFC evaluation, the ALJ stated that he had considered all the medical evidence, including plaintiff's allegations of exertional and non-exertional impairments. (T. 22). The ALJ also states that his finding is supported by the objective medical findings, treatment regimen, the opinion of the consultative specialist, "and by the opinion provided by the non-examining physician at the Disability Determination Service." (T. 22).

The ALJ's finding of plaintiff's RFC is not supported by substantial evidence in the record since although the ALJ relied on the findings of a "non-examining *physician*" at the Disability Determination Service, the record clearly indicates that the Residual Functional Capacity analysis to which the ALJ refers was performed by a *non-medical employee* named L. Weintraub. (T. 149). There is nothing in the record to show the qualifications, training, or experience of this employee who reached important medical conclusions about plaintiff's ability to sit for less than 6 hours in a work day and stand for about 6 hours in a work day, particularly when none of the medical doctors set forth any specific limitations. (T. 144). While it is true that

plaintiff was examined by Dr. Jogendra Chhabra on October 12, 2001, and that Dr. Chhabra found " ... no limitations with walking, sitting, stair climbing, household activities, or personal grooming ..." (T. 154), and that employee L. Weintraub cited Dr. Chhabra's opinion in the Residual Functional Capacity Assessment, it is unclear whether Dr. Chhabra would make the same findings.  Additionally, Dr. Chhabra found that plaintiff might have "intermittent limitations" when her back pain "starts up."  It is unclear how often these "intermittent limitations" might be.

A Residual Functional Capacity Assessment is a medical finding and the Residual Functional Capacity Assessment in this case was not performed by an individual with a medical degree.

The ALJ appears to rely directly on the Residual Functional Capacity Assessment by L. Weintraub since the ALJ specifically refers to plaintiff's ability to sit and stand for at least 6 hours and lift 20 pounds occasionally and 10 pounds frequently, and there is no other indication in the record of such specific functional abilities.  (T. 20).  To the extent, however, that the ALJ believed that L. Weintraub was a non-examining *physician,* his reliance on that assessment is not supported by substantial evidence in the record.

In addition, the ALJ appears to be rendering a medical opinion when he concludes that "there is also a lack of medical documentation of an impairment which would cause extreme pain or pain which would compromise the claimant's ability to perform work-related activities." (T. 22).  The ALJ specifically referred to the MRI report of April 6, 2000 which found a herniated disc at L5-S1 and some degenerative changes at that level of plaintiff's spine.  (T. 19).  Whether that type of disc injury can

13

cause pain is a medical opinion.  The record does contain a medical opinion about whether plaintiff's back condition could cause pain.  That opinion is from Dr. Stephen Meyer, who wrote on January 11, 2001 that plaintiff "may certainly be having neuropathic-related pain in the back of her leg to her left heel."  (T. 119).  The ALJ's finding about plaintiff's residual functional capacity, therefore, is not supported by substantial evidence in the record.

5.    **Medical-Vocational Guidelines:**

Plaintiff argues that the ALJ's use of the Medical-Vocational Rules is incorrect since plaintiff suffers from "severe" non-exertional limitations. (Brief, p. 17).  The ALJ found that plaintiff's diabetes and abdominal cramps were not "severe" and did not reduce plaintiff's ability to perform work-related functions. (T. 21).

The court would point out that pain itself is not necessarily a "non-exertional" impairment.  The Second Circuit has cited the Social Security regulations in defining "exertional" limitations as limitations and restrictions imposed by impairments and related symptoms such as pain that affect only the ability to meet the strength demands of jobs such as sitting, standing, walking, lifting, carrying, pushing and pulling. *Butts v. Barnhart*, 388 F.3d 377, 381 (2d Cir. 2004)(citing 20 C.F.R. § 416.969a(b)).

Non-exertional limitations are those limitations and restrictions imposed by impairments and related symptoms such as pain that affect only the ability to meet the demands of jobs ***other than strength demands.*** *Id.* (citing 20 C.F.R. § 404.969a(c)).  *See also* 20 C.F.R. § 404.1569a(c).  The regulations refer to pain as a "symptom" that can lead to exertional or non-exertional limitations.  In this case, there is no support in the record for the assertion that plaintiff's pain is severe when she is not performing

physical activities so that it would be a non-exertional impairment. The record shows that plaintiff reported to Dr. W. Jay Levy that her pain was **specifically tied to physical activity** and that when she was less active, she had less pain. (T. 113-117). In general, therefore, the use of the Medical-Vocational Guidelines was not error in this case.

**6.    Credibility:**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)(quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged...." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff in this case, argues that the ALJ did not properly analyze plaintiff's credibility and did not follow the Social Security Regulations in this regard. The record shows that plaintiff has made somewhat inconsistent statements to different treating medical professionals about her back pain and the extent of her disability. For example, on September 6, 2000, plaintiff reported to Dr. W. Jay Levy that her back and leg pain has improved since using steroids (T. 116), and that her back pain increased during November and December with physical activity (T. 115, 114), but that she was having sporadic back pain during January of 2001. When plaintiff visited Dr. Stephen Meyer at the Center for Pain Management, she stated that she was having continuous pain which had been increasing over the last several months on a scale of 7 to 10, with 10 being the maximum possible pain. (T. 119).

Plaintiff stated in her testimony that she was allergic to steroids (T. 188), yet there is nothing in the record that indicates any type of allergic reaction to her

16

treatment with steroids, and Dr. Levy's notes appear to state that the steroids were helping the plaintiff with pain relief and they apparently were continued. (T. 116). Based on the ALJ's review of plaintiff's activities, he found that her testimony was not totally credible, and that finding is supported by substantial evidence in the record.

## 7. **Remand or Reversal**

The court has authority to reverse with or without remand. 42 U.S.C. § 405(g). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Marcus v. Califano*, 615 F.2d 23 (2d Cir. 1979) (remanded for reconsideration under standard that subjective evidence of disabling pain, if credited, may support a finding of disability); *Cutler v. Weinberger*, 516 F.2d 1282 (2d Cir. 1975). Reversal is appropriate, however, only when there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health & Human Serv.*, 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years; remand would likely result in further lengthening the "painfully slow process" of determining disability).

In this case, since the ALJ failed to properly develop the record and properly determine plaintiff's RFC, there are gaps that require a remand for further proceedings.

**WHEREFORE,** based on the findings in the above Report, it is hereby

17

**RECOMMENDED,** that this case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) to properly develop the record and for a proper analysis of plaintiff's residual functional capacity consistent with this Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:   January 20, 2006

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge